**The STATE of Texas, Appellant,**

v.

**Marcus J. WILLIAMS, Appellee.**

No. 06–08–00148–CR.

Court of Appeals of Texas, Texarkana.

Submitted: Nov. 25, 2008.

Decided: Dec. 23, 2008.

Larissa T. Roeder, Michael Casillas, Asst. Dist. Attys., Dallas, for appellant.

Stanley R. Mays, Bailey & Mays, Dallas, for appellee.

Before MORRISS, C.J., CARTER and MOSELEY, JJ.

## OPINION

Opinion by Justice CARTER.

After Marcus J. Williams consented to the search of his vehicle during a routine traffic stop, police officers found a large bottle of purple cough syrup containing 226 grams of codeine, including adulterants and dilutants. Williams was charged with knowing possession with intent to deliver 200 to 400 grams of codeine, including adulterants and dilutants.[1] Williams filed

1. Originally appealed to the Fifth Court of Appeals, this case was transferred to this

a motion to suppress the cough syrup as the fruit of an illegal search and seizure. Finding that the initial purpose for the traffic stop was completed before officers obtained consent to search, the trial court granted the motion to suppress, and the State appealed. Since Texas law establishes police officers may request consent to search a vehicle during a valid traffic stop, we hold that the trial court abused its discretion in suppressing the cough syrup.

## I. Factual Background

Officer Hornback and his partner, Patricia Moore, were patrolling a "high crime area" around eleven o'clock at night when they spotted Williams driving a vehicle with a defective driver's side headlight and a blue accessory light. They stopped Williams, approached him, and began questioning him. Hornback testified Williams was anxious and indirectly answered Moore's questions.[2] The officers obtained Williams' driver's license, but did not immediately return to the patrol car to run it.

Instead, because they were in a high crime area and suspected Williams may have a weapon, the officers asked Williams to step out of the vehicle.[3] Although Hornback stated the officers had no articulable facts to show there were drugs in the car, they asked and obtained Williams' consent to search the vehicle. When asked, "[W]hat crime were you looking for when you asked to search the car," Hornback replied, "Specifically, we are just looking to find out, when we asked for the consent to search the vehicle, if there's

anything in there." Hornback added, "If he would have refused, we wouldn't have any basis to search the vehicle." The search produced a large bottle of cough syrup, and Williams was arrested. The record does not establish that a citation for the defective headlight was issued.

Arguing that the officers' initial purpose for stopping Williams' vehicle was complete before consent was obtained, Williams filed a motion to suppress which alleged his continued detention amounted to an unreasonable seizure. The trial court found that the search of the vehicle pursuant to consent was conducted after the investigation related to the defective headlight was complete. Based on this finding, the trial court granted Williams' motion to suppress.

## II. Standard of Review

■ A trial court's decision to grant or deny a motion to suppress is generally reviewed under an abuse of discretion standard. *Oles v. State*, 993 S.W.2d 103, 106 (Tex.Crim.App.1999); *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App. 1996); *Maysonet v. State*, 91 S.W.3d 365, 369 (Tex.App.-Texarkana 2002, pet. ref'd). Because the trial court is the exclusive trier of fact and judge of witness credibility at a suppression hearing, we afford almost total deference to its determination of facts supported by the record. *State v. Ross*, 32 S.W.3d 853, 856 (Tex.Crim.App. 2000); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex.Crim.App.2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.

Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* Tex. Gov't Code Ann. § 73.001 (Vernon 2005). We are unaware of any conflict between precedent of the Fifth Court of Appeals and that of this Court on any relevant issue. *See* Tex. R.App. P. 41.3.

2. Initially, Hornback also testified that Williams hesitated when providing answers, but then recanted his testimony after reviewing his report which stated Williams was "rapidly" answering questions.

3. There is no evidence in the record that a pat-down search was conducted.

1997). We also afford such deference to a trial court's ruling on application of law to fact questions, also known as mixed questions of law and fact, if the resolution of those questions turns on an evaluation of credibility and demeanor. *Villarreal,* 935 S.W.2d at 139.

However, we review de novo those questions not turning on credibility and demeanor. *Hernandez v. State,* 957 S.W.2d 851 (Tex.Crim.App.1998). For this reason, we review de novo the trial court's application of the law of search and seizure to the facts. *Ross,* 32 S.W.3d at 856; *Maysonet,* 91 S.W.3d at 369. On appeal, the question of whether a specific search or seizure is "reasonable" under the Fourth Amendment is subject to de novo review.

■ Since all evidence is viewed in the light most favorable to the trial court's ruling, we are obligated to uphold it on a motion to suppress if that ruling was supported by the record and was correct under any theory of law applicable to the case. *Ross,* 32 S.W.3d at 856; *Carmouche,* 10 S.W.3d at 327; *State v. Ballard,* 987 S.W.2d 889, 891 (Tex.Crim.App.1999); *Maysonet,* 91 S.W.3d at 369.

### III. The Trial Court Abused Its Discretion in Suppressing the Evidence

■ The parties do not contest the reasonableness of the stop. Therefore, we begin our inquiry with the assumption that the stop was warranted.

■ "No right is held more sacred, or is more carefully guarded, by the common law" than the freedom from unreasonable search and seizure guaranteed by the Fourth Amendment to the United States Constitution. *Terry v. Ohio,* 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A search which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and

scope. *Id.* at 18, 88 S.Ct. 1868. Thus, it is imperative that the scope or purpose of a search be strictly tied to, and justified by, the circumstances which rendered an invasion permissible in the first place. *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Terry,* 392 U.S. at 19–20, 29, 88 S.Ct. 1868.

■ An investigative detention must also be temporary and last no longer than is necessary to effectuate the initial purpose of the stop. *Royer,* 460 U.S. at 500, 103 S.Ct. 1319; *Cisneros v. State,* 165 S.W.3d 853, 859 (Tex.App.-Texarkana 2005, no pet.). In a traffic stop, the police may ask for identification, a valid driver's license, proof of insurance, and may check for outstanding warrants. *Cisneros,* 165 S.W.3d at 859; *United States v. Walker,* 933 F.2d 812, 816–17 (10th Cir.1991). During this time, consent to search a vehicle can be obtained. "[O]nce the reason for the stop has been satisfied, the stop may not be used as a fishing expedition for unrelated criminal activity." *Powell v. State,* 5 S.W.3d 369, 376 (Tex.App.-Texarkana 1999, pet. ref'd) (citing *Ohio v. Robinette,* 519 U.S. 33, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996)); *see also Royer,* 460 U.S. at 497, 103 S.Ct. 1319. It is the State's burden to demonstrate that the seizure it seeks to justify was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure. *Royer,* 460 U.S. at 500, 103 S.Ct. 1319.

■ The trial court determined the purpose for the initial stop concluded before Williams was asked for consent to search the vehicle. We believe the record does not support this finding. The evidence showed that, after stopping Williams, one of the police officers asked him for his driver's license and insurance card.

On a routine traffic stop, police officers may request certain information from a

driver, such as a driver's license and car registration, and may conduct a computer check on that information. It is only after this computer check is completed, and the officer knows that this driver has a currently valid license, no outstanding warrants, and the car is not stolen, that the traffic-stop investigation is fully resolved.

*Kothe v. State,* 152 S.W.3d 54, 63–64 (Tex. Crim.App.2004) (footnote omitted). The order in which these events take place is not determinative. *Id.* at 65. Only if a license check "unduly prolongs" the detention is the officer's action unreasonable under the circumstances. *Id.*

The evidence shows that the officers were processing the traffic stop at the time consent to search was granted. A driver's consent to search the vehicle, if otherwise voluntary, is effective to legalize the search if it is given within the scope of a reasonable traffic stop. *See Royer,* 460 U.S. at 501, 103 S.Ct. 1319. We find there is no evidence, nor has Williams argued, that his detention was improperly prolonged by the request for a voluntary search of the vehicle.

Finally, an issue of voluntariness of the consent has been raised. Williams argues that his consent was not voluntary because he was not told he had the right to refuse the search and he was not free to leave because the officer had possession of his driver's license and insurance information. The fact that the officer still had possession of the driver's license and insurance information is further evidence that the consent was given before the officers had completed processing the routine tasks associated with a traffic stop. Further, the United States Supreme Court has specifically held that the voluntariness of consent to search does not require proof of a knowledge of a right to refuse the search. *Schneckloth v. Bustamonte,* 412

U.S. 218, 234, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The only evidence in this case is that Williams was asked for his consent to search, that he was very cooperative, and that he gave such consent. There was no evidence that such consent was involuntary. This was not an issue addressed by the trial court in the findings or conclusions. We conclude that the State presented the requisite proof that Williams voluntarily consented to the search. Based on all of the above reasons, the substance found was properly seized. Thus, the cough syrup was not the fruit of an illegal search and seizure and should not have been suppressed.

## IV. Conclusion

In conclusion, since neither the initial stop nor its duration violated the Fourth Amendment, Williams' voluntary consent to search his car was not unconstitutionally tainted. The evidence gathered from his car need not be suppressed under the Fourth Amendment. We therefore reverse the trial court's order granting the motion to suppress and remand the case to the trial court for proceedings consistent with this opinion.