In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00126-CR

                                                ______________________________

 

 

                                     DEIDRA M. MCGRAW,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 196th
Judicial District Court

                                                              Hunt County, Texas

                                                            Trial
Court No. 25790

 

                                                           
                                       

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                     MEMORANDUM 
OPINION

 

            Deidra
M. McGraw appeals from her conviction for possession of marihuana in the amount
of 2,000 pounds or less but more than fifty pounds, and resulting sentence of
eighteen years’ imprisonment.  Her sole
point of error contends that the trial court erred in denying her motion to
suppress the evidence.  We affirm the
trial court’s judgment. 

I.          Standard of Review 

            We
review a trial court’s decision on a motion to suppress evidence by applying a
bifurcated standard of review.  Graves v. State, 307 S.W.3d 483, 489
(Tex. App.—Texarkana 2010, pet. ref’d);
Rogers v. State, 291 S.W.3d 148, 151 (Tex. App.—Texarkana 2009, pet.
ref’d).  While we defer to the trial
court on its determination of historical facts and credibility, we review de
novo its application of the law and determination on questions not turning on
credibility.  Carmouche v. State,
10 S.W.3d 323, 332 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d
85, 89 (Tex. Crim. App. 1997); Villarreal
v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); Graves, 307 S.W.3d at 489. 

            We
also afford deference to a trial court’s “application of law to fact
questions,” also known as “mixed questions of law and fact,” if the resolution
of those questions turns on an evaluation of credibility and demeanor.  Guzman,
985 S.W.2d at 89.  Since all the evidence
is viewed in the light most favorable to the trial court’s ruling, we are
obligated to uphold the denial of McGraw’s motion to suppress if it was
supported by the record and was correct under any theory of law applicable to
the case.  Carmouche, 10 S.W.3d at 327–28; State
v. Ballard, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999). 

II.        Scope of Detention  

            “No right is held
more sacred, or is more carefully guarded, by the common law” than freedom from
unreasonable search and seizure as guaranteed by the Fourth Amendment to the United
States Constitution.  Terry v. Ohio, 392 U.S. 1, 9 (1968); State v. Williams, 275 S.W.3d 533, 536
(Tex. App.––Texarkana 2008, no pet.).  “A
search which is reasonable at its inception may violate the Fourth Amendment by
virtue of its intolerable intensity and scope.” 
Williams, 275 S.W.3d at 536
(citing Terry, 392 U.S. at 18).  “Thus, it is imperative that the scope or
purpose of a search be strictly tied to, and justified by, the circumstances
which rendered an invasion permissible in the first place.”  Id. (quoting Florida v. Royer, 460 U.S. 491, 500
(1983); Terry, 392 U.S. at 19–20,
29).  

            Because
a routine traffic stop implicates the United States and Texas Constitutions,
the traffic stop must be reasonable.  Berkemer v. McCarty, 468 U.S. 420, 436–37
(1984); Francis v. State, 922 S.W.2d
176, 178 (Tex. Crim. App. 1996); see U.S. Const. Amend. IV; Tex. Const. art. I, § 9.  We employ the test developed in Terry to determine the reasonableness of
an investigative detention; thus, we inquire:  “(1) whether the officer’s action was
justified at its inception; and, (2) whether it was reasonably related in scope
to the circumstances which justified the interference in the first place.”  Davis
v. State, 947 S.W.2d 240, 242 (Tex. Crim. App. 1997).

            “Under
the first prong, ‘the police officer must be able to point to specific and
articulable facts which, taken together with rational inferences from those
facts, reasonably warrant that intrusion.’”  Davis,
947 S.W.2d at 242 (quoting Terry, 392
U.S. at 21).  The specific, articulable
facts, along with rational inferences from those facts, must allow the officer
to reasonably conclude that the person detained actually is, has been, or soon
will be engaged in criminal activity.  United States v. Sokolow, 490 U.S. 1, 10
(1989).

            The
second prong of Terry requires the
scope of the detention to be “like any other search, [and it] must be strictly
circumscribed by the exigencies which justify its initiation.”  Davis,
947 S.W.2d at 243 (quoting Terry, 392
U.S. at 25–26).  The officer, however,
must diligently pursue a means of investigation that lasts no longer than is
necessary and should be the “least intrusive means reasonably available.”  Id. at
245.  A law enforcement officer may rely
on information, obtained in the course of his or her contact with a citizen, in
justifying further detention.  Powell v. State, 5 S.W.3d 369, 377 (Tex.
App.––Texarkana 1999, pet. ref’d).

            “If
an officer has a reasonable basis for
suspecting that a person has committed a traffic offense, the officer may
legally initiate a traffic stop.”  Graves, 307 S.W.3d at 489; Zervos v. State, 15 S.W.3d 146, 151
(Tex. App.—Texarkana 2000, pet. ref’d); see
Tex. Code Crim. Proc. Ann.
art. 14.01(b) (Vernon 2005).  McGraw was
stopped for following too close to the vehicle in front of her and for
speeding.  McGraw does not contest the
legality of the initial traffic stop.

            Rather, McGraw’s
complaint is that the duration of the traffic stop exceeded the permissible
scope.  It is the State’s burden to
demonstrate that the seizure it seeks to justify was sufficiently limited in
scope and duration to satisfy the conditions of an investigative seizure.  Williams,
275 S.W.3d at 536 (citing Royer, 460
U.S. at 500).  The following findings
were entered by the trial court: 

1.         On January 19, 2009, Deidra McGraw was stopped by Royse City
Police Officers for traffic violations.

2.         After the initial stop and being asked very particular
questions, Deidra McGraw lied about facts in her response to the police
officers. 

3.         Deidra
McGraw lied about her criminal record to police officers. 

4.         Based upon this deceit, Royse City Police Officers had
enough reasonable suspicion to believe that there was a fair probability of
inculpatory evidence in Deidra McGraw’s automobile. 

 

III.       Factual Background 

            Officers Shaun
Meek, Rushing, and Mosely[1]
were patrolling along Highway I-30 at nighttime in three separate patrol
units.  Meek testified that two vehicles
with “out of state license plate[s]” “were following extremely close to each
other” and “speeding, 70 in a 65” when they passed in front of the officers.  The officers “proceeded to follow up behind
the vehicles,” which continued to speed. 
Rushing pulled over the rental car driven by McGraw, and Mosely pulled
over the other vehicle.  

            From
Meek’s recollection, and the video recording of the stop, Rushing indicated
McGraw “had shaky hands on the steering wheel,” “refused to make eye contact,”
and “had a nervous appearance about her, by how fast and hard she was chewing
her gum.”  Rushing explained the reason
for the traffic stop and asked McGraw if she was following the vehicle in front
of her.  Although McGraw agreed that she
was driving too closely, she denied following the other vehicle, stated she did
not know the driver of the other vehicle, and claimed she was travelling alone.

            Rushing
asked for McGraw’s driver’s license and learned that she was from Austin.  McGraw stated that she was travelling to
Tennessee to locate her father, although a Mapquest printout observed by
Rushing through the window depicted directions to Indiana, and the car in front
of McGraw had Indiana license plates. 
After telling McGraw that she would only be receiving warnings for the
traffic offense, Rushing went back to the patrol car to run her driver’s
license number.  In addition to the
indicators of nervousness, Rushing was concerned that McGraw seemed “way too
friendly.”  

            Rushing
was communicating with Mosely while running McGraw’s license.  Mosely advised Rushing that the vehicle in
front of McGraw was driven by Cornealius Neal, who was also acting
nervously.  Although McGraw and Neal were
driving out-of-state vehicles, they both possessed Texas driver’s
licenses.  Neal was also from Austin and contradicted
McGraw’s story by claiming that he knew her. 
Rushing wrote the warnings for the traffic offenses, but did not deliver
them.  McGraw’s driver’s license check
came back “unclear and that she had been arrested several times for large
amounts of illegal narcotics.”  Because
Rushing believed that he caught McGraw in a lie, Rushing asked McGraw to step
outside of her vehicle so that he could question her further about her
relationship with Neal.  Realizing that
Neal claimed to know her, McGraw changed her story and admitted that she knew him.
 However, when asked about her criminal
record, McGraw lied by stating she had only been arrested for theft by
check.  

            McGraw
denied consent for Rushing to search the vehicle.  Rushing then called for a Greenville canine
unit.  While waiting for the unit, McGraw
stated that Neal was going to Indiana, but that she was stopping in
Tennessee.  She claimed they had not been
anywhere else together, but Neal had confessed to travelling with McGraw to
Abilene.  The canine unit arrived,
alerted to McGraw’s trunk, and officers located approximately eighty-one pounds
of marihuana inside several suitcases. 
The entire stop lasted approximately thirty minutes. 

IV.       Further Detention Was
Warranted 

            The scope of an
officer’s inquiry is limited to investigation of the traffic violation and a
few routine inquiries.  Williams, 275 S.W.3d at 536.  McGraw argues that the traffic stop concluded
when she was told by Rushing that she would only receive warnings for the
traffic offense.  However, because
Rushing had not delivered the warnings and had not received the report on
McGraw’s driver’s license, the traffic stop had not concluded.  Courts recognize that during a traffic stop,
the officer has a right to check for outstanding warrants and to examine the
detainee’s driver’s license, insurance, and identification.  Id.
(citing Cisneros v. State, 165 S.W.3d
853, 859 (Tex. App.––Texarkana 2005, no pet.)); Powell, 5 S.W.3d at 377.  It
is only after this computer check is completed and the officer knows that this
driver has a currently valid driver’s license, no outstanding warrants, and the
car is not stolen, that the traffic-stop investigation is fully resolved.  Kothe
v. State, 152 S.W.3d 54, 63–64 (Tex. Crim. App. 2004).  

            Once
a police officer makes a lawful traffic stop, he or she may also investigate
any other offense the officer reasonably suspects has been committed.  Bachick
v. State, 30 S.W.3d 549, 551–52 (Tex. App.—Fort Worth 2000, pet.
ref’d).  Further detention for
investigation beyond the traffic violation requires the officer to have a
reasonable suspicion of further criminal activity.  To be reasonable, a traffic stop must be
temporary and last no longer than is necessary to effectuate the purpose of the
stop.  Davis, 947 S.W.2d at 245. 
The propriety of the length of the detention is judged by assessing
whether the police diligently pursued a means of investigation that was likely
to quickly dispel or confirm their suspicions. 
United States v. Sharpe, 470
U.S. 675, 686 (1985).  Any continued
detention must be based on articulable facts which, when taken together with
rational inferences from those facts, would warrant a person of reasonable
caution in the belief that a continued detention was justified, i.e., the
detainee was or would soon be engaged in criminal activity.  See
Davis, 947 S.W.2d at 244–45.  

            We
find that while the traffic stop was ongoing, and through routine inquiries,
Rushing obtained information which gave him reasonable suspicion to suspect
McGraw was engaged in criminal activity. 
Upon initial contact, McGraw nervously stated she was travelling alone
and denied any knowledge of the driver of the vehicle she was following, but
Rushing determined from the other officer that the other driver acknowledged
their acquaintanceship.  McGraw told the
officer she was travelling to Tennessee to see her father, but a Mapquest
printout indicated directions to Indiana. 
The license check was returned as “unclear,” showing several arrests for
illegal substances, even though McGraw only admitted to one arrest for
theft.  Finally, McGraw changed her story
that she did not know the other driver and admitted that she knew Neal.  Rushing testified that training and
experience showed that two vehicles may travel together during the course of
drug trafficking to allow one of the vehicles to act as a decoy; many times the
officer can only stop one vehicle.  From
Rushing’s experience, the fact that both drivers knew each other, but McGraw
initially denied it, had changing and inconsistent stories, the vehicles were
travelling together at nighttime in rental cars with out-of-state license
plates, together with McGraw’s suspicious driver’s license report, led to a
reasonable belief that McGraw and Neal were transporting drugs.  Finally, the delay for the further
investigation by a canine unit was of relatively short duration, as the entire
stop lasted less than thirty minutes.  

            Giving
the trial court appropriate deference in its finding that Rushing “had enough
reasonable suspicion to believe that there was a fair probability of
inculpatory evidence in Deidra McGraw’s automobile” based upon her “deceit,” we
conclude there was no error in the denial of McGraw’s motion to suppress.  

V.        Conclusion


            We
affirm the trial court’s judgment.  

 

                                                                                    Jack
Carter

                                                                                    Justice

 

Date Submitted:          April 21, 2011

Date Decided:             April 27, 2011

 

Do Not Publish











[1]Rushing’s
and Mosely’s first names are not mentioned in the record.