

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-10-00126-CR

_____

DEIDRA M. MCGRAW, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 196th Judicial District Court
Hunt County, Texas
Trial Court No. 25790

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Deidra M. McGraw appeals from her conviction for possession of marihuana in the amount of 2,000 pounds or less but more than fifty pounds, and resulting sentence of eighteen years' imprisonment. Her sole point of error contends that the trial court erred in denying her motion to suppress the evidence. We affirm the trial court's judgment.

## I. Standard of Review

We review a trial court's decision on a motion to suppress evidence by applying a bifurcated standard of review. *Graves v. State*, 307 S.W.3d 483, 489 (Tex. App.—Texarkana 2010, pet. ref'd); *Rogers v. State*, 291 S.W.3d 148, 151 (Tex. App.—Texarkana 2009, pet. ref'd). While we defer to the trial court on its determination of historical facts and credibility, we review de novo its application of the law and determination on questions not turning on credibility. *Carmouche v. State*, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); *Graves*, 307 S.W.3d at 489.

We also afford deference to a trial court's "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those questions turns on an evaluation of credibility and demeanor. *Guzman*, 985 S.W.2d at 89. Since all the evidence is viewed in the light most favorable to the trial court's ruling, we are obligated to uphold the denial of McGraw's motion to suppress if it was supported by the record and was correct under any

2

theory of law applicable to the case. *Carmouche*, 10 S.W.3d at 327–28; *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).

## II.     Scope of Detention

"No right is held more sacred, or is more carefully guarded, by the common law" than freedom from unreasonable search and seizure as guaranteed by the Fourth Amendment to the United States Constitution. *Terry v. Ohio*, 392 U.S. 1, 9 (1968); *State v. Williams*, 275 S.W.3d 533, 536 (Tex. App.—Texarkana 2008, no pet.). "A search which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and scope." *Williams*, 275 S.W.3d at 536 (citing *Terry*, 392 U.S. at 18). "Thus, it is imperative that the scope or purpose of a search be strictly tied to, and justified by, the circumstances which rendered an invasion permissible in the first place." *Id.* (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983); *Terry*, 392 U.S. at 19–20, 29).

Because a routine traffic stop implicates the United States and Texas Constitutions, the traffic stop must be reasonable. *Berkemer v. McCarty*, 468 U.S. 420, 436–37 (1984); *Francis v. State*, 922 S.W.2d 176, 178 (Tex. Crim. App. 1996); *see* U.S. CONST. AMEND. IV; TEX. CONST. art. I, § 9. We employ the test developed in *Terry* to determine the reasonableness of an investigative detention; thus, we inquire: "(1) whether the officer's action was justified at its inception; and, (2) whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Davis v. State*, 947 S.W.2d 240, 242 (Tex. Crim. App. 1997).

3

"Under the first prong, 'the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Davis*, 947 S.W.2d at 242 (quoting *Terry*, 392 U.S. at 21). The specific, articulable facts, along with rational inferences from those facts, must allow the officer to reasonably conclude that the person detained actually is, has been, or soon will be engaged in criminal activity. *United States v. Sokolow*, 490 U.S. 1, 10 (1989).

The second prong of *Terry* requires the scope of the detention to be "like any other search, [and it] must be strictly circumscribed by the exigencies which justify its initiation." *Davis*, 947 S.W.2d at 243 (quoting *Terry*, 392 U.S. at 25–26). The officer, however, must diligently pursue a means of investigation that lasts no longer than is necessary and should be the "least intrusive means reasonably available." *Id.* at 245. A law enforcement officer may rely on information, obtained in the course of his or her contact with a citizen, in justifying further detention. *Powell v. State*, 5 S.W.3d 369, 377 (Tex. App.—Texarkana 1999, pet. ref'd).

"If an officer has a *reasonable basis* for suspecting that a person has committed a traffic offense, the officer may legally initiate a traffic stop." *Graves*, 307 S.W.3d at 489; *Zervos v. State*, 15 S.W.3d 146, 151 (Tex. App.—Texarkana 2000, pet. ref'd); *see* TEX. CODE CRIM. PROC. ANN. art. 14.01(b) (Vernon 2005). McGraw was stopped for following too close to the vehicle in front of her and for speeding. McGraw does not contest the legality of the initial traffic stop.

4

Rather, McGraw's complaint is that the duration of the traffic stop exceeded the permissible scope. It is the State's burden to demonstrate that the seizure it seeks to justify was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure. *Williams*, 275 S.W.3d at 536 (citing *Royer*, 460 U.S. at 500). The following findings were entered by the trial court:

1. On January 19, 2009, Deidra McGraw was stopped by Royse City Police Officers for traffic violations.
2. After the initial stop and being asked very particular questions, Deidra McGraw lied about facts in her response to the police officers.
3. Deidra McGraw lied about her criminal record to police officers.
4. Based upon this deceit, Royse City Police Officers had enough reasonable suspicion to believe that there was a fair probability of inculpatory evidence in Deidra McGraw's automobile.

## III. Factual Background

Officers Shaun Meek, Rushing, and Mosely[1] were patrolling along Highway I-30 at nighttime in three separate patrol units. Meek testified that two vehicles with "out of state license plate[s]" "were following extremely close to each other" and "speeding, 70 in a 65" when they passed in front of the officers. The officers "proceeded to follow up behind the vehicles," which continued to speed. Rushing pulled over the rental car driven by McGraw, and Mosely pulled over the other vehicle.

From Meek's recollection, and the video recording of the stop, Rushing indicated McGraw "had shaky hands on the steering wheel," "refused to make eye contact," and "had a nervous

---

[1]Rushing's and Mosely's first names are not mentioned in the record.

appearance about her, by how fast and hard she was chewing her gum." Rushing explained the reason for the traffic stop and asked McGraw if she was following the vehicle in front of her. Although McGraw agreed that she was driving too closely, she denied following the other vehicle, stated she did not know the driver of the other vehicle, and claimed she was travelling alone.

Rushing asked for McGraw's driver's license and learned that she was from Austin. McGraw stated that she was travelling to Tennessee to locate her father, although a Mapquest printout observed by Rushing through the window depicted directions to Indiana, and the car in front of McGraw had Indiana license plates. After telling McGraw that she would only be receiving warnings for the traffic offense, Rushing went back to the patrol car to run her driver's license number. In addition to the indicators of nervousness, Rushing was concerned that McGraw seemed "way too friendly."

Rushing was communicating with Mosely while running McGraw's license. Mosely advised Rushing that the vehicle in front of McGraw was driven by Cornealius Neal, who was also acting nervously. Although McGraw and Neal were driving out-of-state vehicles, they both possessed Texas driver's licenses. Neal was also from Austin and contradicted McGraw's story by claiming that he knew her. Rushing wrote the warnings for the traffic offenses, but did not deliver them. McGraw's driver's license check came back "unclear and that she had been arrested several times for large amounts of illegal narcotics." Because Rushing believed that he caught McGraw in a lie, Rushing asked McGraw to step outside of her vehicle so that he could

6

question her further about her relationship with Neal. Realizing that Neal claimed to know her, McGraw changed her story and admitted that she knew him. However, when asked about her criminal record, McGraw lied by stating she had only been arrested for theft by check.

McGraw denied consent for Rushing to search the vehicle. Rushing then called for a Greenville canine unit. While waiting for the unit, McGraw stated that Neal was going to Indiana, but that she was stopping in Tennessee. She claimed they had not been anywhere else together, but Neal had confessed to travelling with McGraw to Abilene. The canine unit arrived, alerted to McGraw's trunk, and officers located approximately eighty-one pounds of marihuana inside several suitcases. The entire stop lasted approximately thirty minutes.

## IV. Further Detention Was Warranted

The scope of an officer's inquiry is limited to investigation of the traffic violation and a few routine inquiries. *Williams*, 275 S.W.3d at 536. McGraw argues that the traffic stop concluded when she was told by Rushing that she would only receive warnings for the traffic offense. However, because Rushing had not delivered the warnings and had not received the report on McGraw's driver's license, the traffic stop had not concluded. Courts recognize that during a traffic stop, the officer has a right to check for outstanding warrants and to examine the detainee's driver's license, insurance, and identification. *Id.* (citing *Cisneros v. State*, 165 S.W.3d 853, 859 (Tex. App.—Texarkana 2005, no pet.)); *Powell*, 5 S.W.3d at 377. It is only after this computer check is completed and the officer knows that this driver has a currently valid driver's license, no

outstanding warrants, and the car is not stolen, that the traffic-stop investigation is fully resolved. *Kothe v. State*, 152 S.W.3d 54, 63–64 (Tex. Crim. App. 2004).

Once a police officer makes a lawful traffic stop, he or she may also investigate any other offense the officer reasonably suspects has been committed. *Bachick v. State*, 30 S.W.3d 549, 551–52 (Tex. App.—Fort Worth 2000, pet. ref'd). Further detention for investigation beyond the traffic violation requires the officer to have a reasonable suspicion of further criminal activity. To be reasonable, a traffic stop must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *Davis*, 947 S.W.2d at 245. The propriety of the length of the detention is judged by assessing whether the police diligently pursued a means of investigation that was likely to quickly dispel or confirm their suspicions. *United States v. Sharpe*, 470 U.S. 675, 686 (1985). Any continued detention must be based on articulable facts which, when taken together with rational inferences from those facts, would warrant a person of reasonable caution in the belief that a continued detention was justified, i.e., the detainee was or would soon be engaged in criminal activity. *See Davis*, 947 S.W.2d at 244–45.

We find that while the traffic stop was ongoing, and through routine inquiries, Rushing obtained information which gave him reasonable suspicion to suspect McGraw was engaged in criminal activity. Upon initial contact, McGraw nervously stated she was travelling alone and denied any knowledge of the driver of the vehicle she was following, but Rushing determined from the other officer that the other driver acknowledged their acquaintanceship. McGraw told the

8

officer she was travelling to Tennessee to see her father, but a Mapquest printout indicated directions to Indiana. The license check was returned as "unclear," showing several arrests for illegal substances, even though McGraw only admitted to one arrest for theft. Finally, McGraw changed her story that she did not know the other driver and admitted that she knew Neal. Rushing testified that training and experience showed that two vehicles may travel together during the course of drug trafficking to allow one of the vehicles to act as a decoy; many times the officer can only stop one vehicle. From Rushing's experience, the fact that both drivers knew each other, but McGraw initially denied it, had changing and inconsistent stories, the vehicles were travelling together at nighttime in rental cars with out-of-state license plates, together with McGraw's suspicious driver's license report, led to a reasonable belief that McGraw and Neal were transporting drugs. Finally, the delay for the further investigation by a canine unit was of relatively short duration, as the entire stop lasted less than thirty minutes.

Giving the trial court appropriate deference in its finding that Rushing "had enough reasonable suspicion to believe that there was a fair probability of inculpatory evidence in Deidra McGraw's automobile" based upon her "deceit," we conclude there was no error in the denial of McGraw's motion to suppress.

## V. Conclusion

We affirm the trial court's judgment.

Jack Carter
Justice

Date Submitted: April 21, 2011
Date Decided: April 27, 2011

Do Not Publish