**Lajonte JAMES, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 06–00–00090–CR.

Court of Appeals of Texas, Texarkana.

Submitted Oct. 18, 2001.

Decided Nov. 7, 2001.

Rehearing Overruled Jan. 29, 2002.

Paul Hoover, Paul D. Hoover & Associates, Texarkana, for appellant.

Nicole Habersang, Asst. Dist. Atty., Texarkana, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Chief Justice CORNELIUS.

Lajonte James pleaded guilty, as part of a plea bargaining agreement, to possession of cocaine in an amount greater than or equal to four grams, but less than 200 grams. The trial court sentenced James to five years' confinement, as called for in the plea bargaining agreement. James contends the trial court erred in overruling his motion to suppress evidence of the cocaine.

Initially, we must determine whether we have jurisdiction of this appeal. If an appeal is from a judgment rendered on the defendant's plea of guilty under TEX. CODE CRIM. PROC. ANN. art. 1.15 (Vernon Supp.2001), and the punishment assessed did not exceed the punishment recommended by the prosecutor and agreed to by the defendant, the appellant's notice of appeal must specify: (1) that the appeal concerns a jurisdictional defect, (2) that the substance of the appeal was raised by written motion and ruled on before trial, or (3) that the trial court granted the appellant permission to appeal. TEX.R.APP. P. 25.2(b)(3). A notice of appeal that does not conform to Rule 25.2(b)(3) deprives this Court of jurisdiction to consider the appeal on its merits. *See Jones v. State,* 796 S.W.2d 183, 186 (Tex.Crim.App.1990).

The record shows that when James entered his guilty plea, the trial court acknowledged that James was "reserving the right to appeal the Court's ruling on a motion to suppress." In addition, in the papers filed with the plea bargaining agreement, a handwritten notation recites, "Defendant reserves right to appeal motion to suppress . . . ." Finally, an entry in the trial court's docket sheet notes that the defendant "pled guilty . . . with right to appeal ct's ruling on m/suppress." However, James' notice of appeal does not "specify that the substance of the appeal was raised by written motion and ruled on before trial," as Rule 25.2(b)(3)(B) requires.

In *Jones v. State,* 796 S.W.2d at 183, a defendant who had pleaded guilty as part of a plea bargaining agreement filed a general notice of appeal and, after the State pointed out the jurisdictional defect, the defendant filed an amended notice of appeal. *Id.* at 185. The Texas Court of Criminal Appeals held that Rule 40(b)(1), the precursor to Rule 25.2, is a restrictive

rule regulating the extent of the grounds on which a defendant may appeal. The court held that compliance with Rule 40(b)(1) is necessary for a defendant to avoid the statutory restrictions on his right to appeal. Therefore, in that case, the appellant's general notice of appeal was insufficient to confer jurisdiction on the court of appeals.

However, in *Riley v. State*, 825 S.W.2d 699, 701 (Tex.Crim.App.1992), the Court of Criminal Appeals recognized an exception to the strict application of Rule 40(b)(1). In *Riley v. State*, the appellant filed a general notice of appeal, but the record also contained an order from the trial court granting the appellant permission to appeal and stating that a suppression motion was raised before trial. The Court of Criminal Appeals held the trial court's order combined with the timely filed notice of appeal was sufficient to confer jurisdiction on the court of appeals to consider nonjurisdictional defects recited in the order.

Even after *Jones* and *Riley*, courts of appeals have differed concerning whether substantial compliance with Rule 25.2(b)(3) is sufficient to confer jurisdiction. In *Sherman v. State*, 12 S.W.3d 489, 492 (Tex.App.Dallas 1999, no pet.), the court of appeals held that compliance with both the form and the substance of the rule is required in order to properly invoke the court of appeals' jurisdiction. That case is not exactly on point, however, because the issue there was whether the record substantiated the appellant's statements in his notice of appeal that he had met the jurisdictional requirements.

Other courts have recognized that substantial compliance with Rule 25.2(b)(3), as demonstrated by the overall record, may confer jurisdiction. In *Finch v. State*, 66 S.W.2d 323, 326 (Tex.App.—Fort Worth 2001, no pet. h.), the court found substantial compliance where the defendant's reservation of his right to appeal rulings on his pretrial motions appeared in several places in the clerk's record, e.g., the written plea admonishments, the plea bargaining agreement, the trial court's certificate of proceedings, and the judgment. In *Johnson v. State*, 47 S.W.3d 701, 704 (Tex. App.—Houston [14th Dist.] 2001, no pet. h.), the court found substantial compliance where the judgment and the docket sheet both contained notations indicating that the defendant was appealing the trial court's ruling on his motion to suppress. In *Miller v. State*, 11 S.W.3d 345, 347 (Tex.App.Houston [14th Dist.] 1999, pet. ref'd), and *Gomes v. State*, 9 S.W.3d 170, 171–72 (Tex.App.Houston [14th Dist.] 1999, no pet.), courts found substantial compliance from (1) a handwritten notation on the general notice of appeal, which was signed by the trial judge, (2) an entry on the trial court's docket sheets, and (3) in *Gomes*, a notation on the judgment, or (4) in *Miller*, the trial court's statement on the record, all of which indicated that the appellants were appealing the trial courts' rulings on their motions to suppress.

Our case is more like those cases in which courts have found substantial compliance. As in *Johnson*, *Miller*, and *Gomes*, the docket sheet contains an entry evidencing James' desire to appeal the trial court's ruling on his motion to suppress. As in *Finch*, the plea bargaining agreement also shows James' reservation of his right to appeal. Further, the trial court stated on the record that James was pleading guilty but reserving his right to appeal the trial court's ruling on his motion to suppress.

■ *Brunswick v. State*, 931 S.W.2d 9 (Tex.App.—Houston [1st Dist.] 1996, no pet.), is distinguishable because, in the present case, James filed a written notice of appeal, whereas in *Brunswick* the ap-

pellant did not. *Glenn v. State*, 991 S.W.2d 285 (Tex.App.—Houston [1st Dist.] 1997, no pet.), *overruled on other grounds*, *State v. Riewe*, 13 S.W.3d 408 (Tex.Crim. App.2000), is also distinguishable because there was no order or any other document in the record reciting the information required by the appellate rule. *Glenn v. State*, 991 S.W.2d at 288. The court cited *Diaz v. State*, 877 S.W.2d 452, 453 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd), as an illustration of what might have constituted substantial compliance, i.e., a recitation in the plea bargaining agreement. Here the plea bargaining agreement does indicate James' desire to appeal the trial court's ruling on his motion to suppress. Consequently, we conclude we have jurisdiction of this appeal.

At the suppression hearing, Officer Robert McCarver testified that he was conducting surveillance at 2141 South Akin in Texarkana, where he had been informed a shipment of cocaine would be delivered. He testified he saw James drive up to the house, get out of his car, leave the motor running, enter the house, and moments later emerge and drive away. He also testified he noticed that James did not have license plates displayed on his vehicle.

McCarver testified he followed James and called for a uniformed police officer to stop James' car. He testified that before the uniformed officer arrived, James pulled into the yard at 708 Lumpkin Street, stopped, and got out of his car. McCarver said the Lumpkin Street home was also a suspected narcotics "stash house." He testified he approached James in the yard of the Lumpkin Street home. Scott Sartor, the uniformed police officer, arrived a short time later. On appeal, James contends that the officers "blocked" his car in the driveway, but the only evidence is that the officers pulled up behind James' car. There is no evidence that the officers exerted any force or took any action to detain James or prevent him from leaving.

McCarver testified that he asked James what his business was at the Akin Street home. He testified that James told him he had relatives living there. McCarver also testified that he confronted James with his suspicions that the Akin Street home was being used for narcotics trafficking and asked him whether he was involved in that. He testified that James denied he was involved in any narcotics activity at all.

McCarver testified that James told him he lived at the Lumpkin Street home with his girlfriend. McCarver and Sartor both testified that McCarver asked for and received James' verbal permission to search the Lumpkin Street home. They testified that they did not coerce or try to persuade James to let them search the house. McCarver characterized his conversation with James as cordial; Sartor characterized it as casual.

Both officers testified that they entered the house through the front door using James' key, though on cross-examination Sartor admitted he could not recall whether they entered the house through the back door. Sartor found the cocaine inside a decorative metal tin on the mantel in the living room. Also inside the tin the officers found two receipts in James' name. McCarver also testified that some of James' clothes were in the house.

James denied that he lived at the Lumpkin Street home, but testified that he lived at the Akin Street home with his mother. He admitted, however, that the Lumpkin Street home was his girlfriend's residence and that he sometimes stayed there. He also admitted that there was a basket of his clothes at the Lumpkin Street home.

James testified that on the morning he was arrested, he "left his house" and stopped at the Akin Street home to pick up some of his mail. He testified he stayed at the Akin Street address twenty to twenty-five minutes. He then drove over to the Lumpkin Street home to get some fuses for his car that he testified were "in my garage, in my other car."

James said that as he pulled up to the Lumpkin Street home, McCarver pulled in behind him, got out of his truck, and demanded that James get out of his vehicle. He also testified he saw several other police cars around his house. He testified that McCarver searched him, searched his car, and then placed him in handcuffs. He also testified that McCarver asked for his consent to search the house, but that he told McCarver he could not give consent because it was not his house.

James testified that McCarver took his keys, that they went to the front door but found the screen door locked, and that they then went to the back and entered through the back door using his key. He testified that it was McCarver who opened the door using his key. He also testified that several other police officers entered the house.

■ At a suppression hearing, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses and the weight of their testimony. *Green v. State*, 934 S.W.2d 92, 98 (Tex.Crim.App. 1996). Therefore, an appellate court must view the evidence in the record and draw all reasonable inferences therefrom in the light most favorable to the trial court's ruling. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App.1996). Further, the appellate court must sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory

of law applicable to the case. *Id.; Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim. App.1990).

■ The general rule is that we must afford almost total deference to the trial court's determination of the historical facts that the record supports, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim.App.1997). We are also to afford such deference to a trial court's ruling on the application of law to fact questions if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. We may review *de novo* the application of law to fact questions not turning on credibility and demeanor.

■ Under the Fourth and Fourteenth Amendments to the United States Constitution, a search conducted without a warrant issued with probable cause is per se unreasonable. *Schneckloth v. Busta- monte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854, 858 (1973); *McAllister v. State*, 34 S.W.3d 346, 350 (Tex.App.—Tex- arkana 2000, pet. ref'd). Consent to search, however, is one of the well-established exceptions to the constitutional requirements of both a warrant and probable cause. *Schneckloth v. Bustamonte*, 412 U.S. at 219, 93 S.Ct. 2041; *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex.Crim.App. 2000); *McAllister v. State*, 34 S.W.3d at 350.

■ James first contends that McCarver did not in fact obtain his consent to search the Lumpkin Street home. His position is at variance with his position in the trial court, where he argued that he could not give consent because he did not live at the Lumpkin Street home.[1] Never-

---

1. If James did not have authority to consent    to the search of the Lumpkin Street home, he

theless, there is evidence from which the trial court could have concluded that James did consent, as both McCarver and Sartor testified positively that James gave his verbal consent to the search. Though James denies that he gave consent, the trial court was free to find the officers' testimonies more credible.[2]

James also contends that, if he did give consent, he did not give it voluntarily. The test for a valid consent to search is whether the consent was voluntary, a question of fact to be determined from all the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. at 248–49, 93 S.Ct. 2041; *Carmouche v. State*, 10 S.W.3d at 331; *McAllister v. State*, 34 S.W.3d at 350. For consent to be voluntary, it must not be the product of duress or coercion, actual or implied. *Schneckloth v. Bustamonte*, 412 U.S. at 248–49, 93 S.Ct. 2041; *DuBose v. State*, 915 S.W.2d 493, 496 (Tex.Crim.App. 1996), *overruled on other grounds, Guzman v. State*, 955 S.W.2d at 90; *McAllister v. State*, 34 S.W.3d at 350. In Texas, the State is required to prove by clear and convincing evidence that consent was voluntarily given. *State v. Ibarra*, 953 S.W.2d 242, 243 (Tex.Crim.App.1997); *McAllister v. State*, 34 S.W.3d at 350.

James contends that under the totality of the circumstances, his consent to the search of the Lumpkin Street home was not voluntary. He cites *United States v.* *Galberth*, 846 F.2d 983, 987 (5th Cir.1988), as illustrative of the kinds of factors federal courts weigh in determining the voluntariness of consent. In *Galberth*, the court outlined six factors: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found. These factors are similar to those the Texas Court of Criminal Appeals has approved in determining the voluntariness of consent. *See, e.g., Reasor v. State*, 12 S.W.3d 813, 818 (Tex.Crim.App.2000).

Viewing the suppression hearing record in the light most favorable to the trial court's ruling, we conclude James' consent to search the Lumpkin Street home was voluntary. McCarver and Sartor both testified that James was not in custody or otherwise restrained when he gave his consent to the search. McCarver testified positively that James was free to leave if he desired. Both officers characterized McCarver's conversation with James as casual and cordial, not coercive or threatening. Both officers said James was not handcuffed, no officer exhibited a gun, and neither officer exercised any restraint or force over James. Further,

---

also does not have standing to protest the search of that home. He may, however, have standing to protest the search of the metal tin, which he acknowledged at the suppression hearing belonged to him. He did not make that contention at the suppression hearing and does not make it here.

2. At oral argument, James contended for the first time that an officer must have a reasonable basis for requesting consent. He does not offer support for his position, and we conclude it is untenable. *See Florida v. Bostick*, 501 U.S. 429, 437, 111 S.Ct. 2382, 115 L.Ed.2d 389, 400 (1991) ("[N]o seizure occurs when police ask questions of an individual, ask to examine the individual's identification, and request consent to search his or her luggage—so long as the officers do not convey a message that compliance with their requests is required."); *Hunter v. State*, 955 S.W.2d 102, 106 (Tex.Crim.App.1997) ("A police officer's asking questions and requesting consent to search do not alone render an encounter a detention. *Only if the officer conveyed a message that compliance was required* has a consensual encounter become a detention.").

McCarver and Sartor both testified that James let them into the house using his key.

James testified that McCarver handcuffed him and searched him and his car before taking his key and entering the house, but the trial court was free to disbelieve that testimony. As mentioned previously, we afford almost total deference to a trial court's determination of the historical facts that the record supports, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d at 89.

■ James notes that McCarver did not tell him that he had the right to refuse consent. Although this is one factor to be weighed in considering the voluntariness of consent, it is not a factor to be viewed in isolation. Here the evidence shows that McCarver engaged James briefly in a noncoercive conversation and asked for his consent to search the Lumpkin Street home. Under these circumstances, we conclude that James' subsequent consent to the search was voluntary.

James also asks us to conduct an attenuation analysis to determine whether his consent to the search was rendered ineffective by police illegality. He cites *Viveros v. State*, 799 S.W.2d 458, 461 (Tex. App.—Corpus Christi 1990), *aff'd*, 828 S.W.2d 2 (Tex.Crim.App.1992). *Viveros* involved an illegal traffic stop and subsequent consent to search the suspect's vehicle. The court of appeals concluded the consent was obtained as a direct result of the illegal stop.

■ An attenuation analysis is used to determine whether the connection between illegal actions of police and the discovery of evidence is so attenuated that the connection has dissipated to the point that the evidence is admissible despite the officers'

illegal conduct. *Wong Sun v. United States*, 371 U.S. 471, 487–88, 83 S.Ct. 407, 9 L.Ed.2d 441, 455 (1963). Thus, in *Viveros*, the court conducted an attenuation analysis to determine whether the defendant's consent to the search was valid in light of the illegal traffic stop. *Viveros v. State*, 799 S.W.2d at 461. Here there is no evidence of any illegal conduct by the police, and James does not contend that McCarver did not have a sufficient basis to approach him in the first instance.

■ James next contends that even if his consent was voluntary, the subsequent search went beyond the scope of the consent. When a person voluntarily consents to a search, the officer's authority to perform the search is not without limit. *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297, 300 (1991); *DuBose v. State*, 915 S.W.2d at 496; *McAllister v. State*, 34 S.W.3d at 351. The extent of the search is limited to the scope of the consent given, and the scope of the consent is generally defined by its expressed object. *Florida v. Jimeno*, 500 U.S. at 251, 111 S.Ct. 1801; *DuBose v. State*, 915 S.W.2d at 496; *McAllister v. State*, 34 S.W.3d at 351. The standard for measuring the scope of consent is that of objective reasonableness, i.e., what a reasonable person would have understood by the exchange between the officer and the individual. *Florida v. Jimeno*, 500 U.S. at 251, 111 S.Ct. 1801; *DuBose v. State*, 915 S.W.2d at 496; *McAllister v. State*, 34 S.W.3d at 351.

■ A reasonable person in James' position would have understood that the object of the search would be evidence of narcotics activity and that the search would be limited to places where such evidence could reasonably be concealed. McCarver testified that he informed James of his suspicion that the Akin Street address was being used for narcotics traffick-

ing and asked him if he was involved in that activity. James denied that he was involved in narcotics activity, and McCarver asked for his consent to search the Lumpkin Street home. It is not unreasonable to expect that evidence of narcotics activity would be concealed in a decorative metal tin. Thus, the search did not exceed its intended scope.

The judgment is affirmed.