ACCEPTED
06-16-00079-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
9/6/2016 2:50:51 PM
DEBBIE AUTREY
CLERK

**ORAL ARGUMENT REQUESTED**

CAUSE NO. 06-16-00079-CR

IN THE

COURT OF APPEALS

SIXTH APPELLATE DISTRICT OF TEXAS AT TEXARKANA

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS

9/6/2016 2:50:51 PM

DEBBIE AUTREY
Clerk

_____

AMY DANNETTE JACKSON, Appellant

V.

THE STATE OF TEXAS, Appellee

_____

ON APPEAL FROM THE 102ND JUDICIAL DISTRICT COURT
RED RIVER COUNTY, TEXAS; TRIAL COURT NO. CR02147;
HONORABLE BOBBY LOCKHART, JUDGE PRESIDING

_____

# APPELLEE'S (STATE'S) BRIEF

_____

Respectfully submitted,

Val J. Varley, County and District Attorney
Red River County and District Attorney's Office
Red River County Courthouse
400 North Walnut Street
Clarksville, Texas    75426-4012
(903) 427-2009
(903) 427-5316 (Fax)

**ATTORNEYS FOR THE STATE OF TEXAS**

1

## <u>IDENTITY OF PARTIES AND COUNSEL</u>

Pursuant to Tex. R. App. P. 38.2(a)(1)(A), the list of parties and counsel is not required to supplement or correct the appellant's list.

# **TABLE OF CONTENTS**

IDENTITY OF PARTIES AND COUNSEL      2

TABLE OF CONTENTS      3

INDEX OF AUTHORITIES      4

STATEMENT OF THE CASE      8

SOLE ISSUE/POINT OF ERROR PRESENTED IN REPLY      9

INTRODUCTION      10

STATEMENT OF FACTS      11

SUMMARY OF THE ARGUMENT      19

ARGUMENT AND AUTHORITIES      20

PRAYER      41

CERTIFICATE OF COMPLIANCE      42

CERTIFICATE OF SERVICE      42

# INDEX OF AUTHORITIES

**CASES (U.S. SUPREME COURT):**                                    **PAGE:**

*Arizona v. Gant*,
556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009).            24-27

*Arizona v. Johnson*,
555 U.S. 323, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009).            21-23

*Brendlin v. California*,
551 U.S. 249, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007).         13, 21, 23

*Royer v. Florida*,
460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).            25

*Schneckloth v. Bustamonte*,
412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).            26, 36

*United States v. Arvizu*,
534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002).            29-30

*United States v. Drayton*,
536 U.S. 194, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002).            34-35

*Whren v. United States*,
517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).            21, 23

*Wyo. v. Houghton*,
526 U.S. 295, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999).            35

**TEXAS CASES:**

*Barnes v. State*,
424 S.W.3d 218 (Tex. App.--Amarillo 2014, no pet.).            27

*Carmouche v. State*,
10 S.W.3d 323 (Tex. Crim. App. 2000).                     21, 26-27, 36

*Carpenter v. State*,

952 S.W.2d 1 (Tex. App.--San Antonio 1997),
*aff'd*, 979 S.W.2d 633 (Tex. Crim. App. 1998). 38

*Fisher v. State*,
481 S.W.3d 403 (Tex. App.--Texarkana 2015, pet. ref'd). 28, 32, 34

*Gonzalez v. State*,
195 S.W.3d 114 (Tex. Crim. App. 2006). 21, 27

*Goudeau v. State*, 209 S.W.3d 713
(Tex. App.--Houston [14th Dist.] 2006, no pet.). 28, 32, 34

*Gouldsby v. State*,
202 S.W.3d 329 (Tex. App.--Texarkana 2006, pet. ref'd). 33

*Graves v. State*,
307 S.W.3d 483 (Tex. App.--Texarkana 2010, pet. ref'd). 20

*Guzman v. State*,
955 S.W.2d 85 (Tex. Crim. App. 1997). 20

*James v. State*,
72 S.W.3d 35 (Tex. App.--Texarkana 2001, pet. ref'd). 38-40

*Kendrick v. State*,
93 S.W.3d 230 (Tex. App.--Houston [14th Dist.] 2002, no pet). 38

*Lewis v. State*,
664 S.W.2d 345 (Tex. Crim. App. 1984). 23

*McAllister v. State*,
34 S.W.3d 346 (Tex. App.--Texarkana 2000, pet. ref'd). 36-37, 39

*Overshown v. State*,
329 S.W.3d 201 (Tex. App.--Houston [14th Dist.] 2010, no pet.). 22

*Powell v. State*,
5 S.W.3d 369 (Tex. App.--Texarkana 1999, pet. ref'd). 31

*Rhodes v. State*,

945 S.W.2d 115 (Tex. Crim. App. 1997), *cert. denied*,
522 U.S. 894, 118 S. Ct. 236, 139 L.Ed.2d 167 (1997).                13, 22

*Rogers v. State*,
291 S.W.3d 148 (Tex. App.--Texarkana 2009, pet. ref'd).              20

*State v. Ballard*,
987 S.W.2d 889 (Tex. Crim. App. 1999).                               21, 27

*State v. Williams*,
275 S.W.3d 533 (Tex. App.--Texarkana 2008, no pet.).                 25-27

*Tanner v. State*,
228 S.W.3d 852 (Tex. App.--Austin 2007, no pet.).                    31

*Torres v. State*,
182 S.W.3d 899 (Tex. Crim. App. 2005).                               21, 27, 38

*Vann v. State*,
216 S.W.3d 881 (Tex. App.--Fort Worth 2007, no pet.).                22

*Vasquez v. State*,
804 S.W.2d 606 (Tex. App.--Dallas 1991, no pet.).                    26

*Wade v. State*,
422 S.W.3d 661 (Tex. Crim. App. 2013).                               29

*Wiede v. State*,
214 S.W.3d 17 (Tex. Crim. App. 2007).                                20, 36

*Young v. State*,
420 S.W.3d 139 (Tex. App.--Texarkana 2012, no pet.).                 28

**TEXAS CODES:**

Tex. Health & Safety Code Ann. § 481.115(a)-(b) (West 2010).    8, 16

**TEXAS RULES OF APPELLATE PROCEDURE:**

Tex. R. App. P. 9.4(i)(3)    42

Tex. R. App. P. 9.5    42

Tex. R. App. P. 38.2    10

Tex. R. App. P. 38.2(a)(1)(A)    2

## STATEMENT OF THE CASE

This is a criminal appeal from the trial court's order denying the appellant's motion to suppress. *See* CR, pg. 36.

A grand jury in Red River County returned an original indictment (CR, pgs. 8-9), which charged the appellant (Jackson) with the state-jail felony offense of possession of a controlled substance in Penalty Group One, to-wit: methamphetamine in an amount less than one gram. *See* Tex. Health & Safety Code Ann. § 481.115(a)-(b) (West 2010).

In due course, Jackson filed her motion to suppress. *See* CR, pgs. 21-24. After a hearing, the trial court took "this under advisement." *See* RR, pg. 57. Later, the trial court signed an order denying the appellant's motion to suppress. *See* CR, pg. 36.

Afterwards, the trial court accepted a plea-bargain agreement and signed an Order of Deferred Adjudication. *See* CR, pgs. 59-60. The trial court also signed its certification that gave permission for Jackson to appeal. *See* CR, pg. 45. Subsequently, Jackson filed her notice of appeal. *See* CR, pg. 65. By this appeal, Jackson brought a single issue/point of error.

## ISSUE/POINT OF ERROR PRESENTED IN REPLY

**SOLE ISSUE/POINT OF ERROR PRESENTED IN REPLY: THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DENYING THE APPELLANT'S MOTION TO SUPPRESS.**

CAUSE NO. 06-16-00079-CR

IN THE

COURT OF APPEALS

SIXTH APPELLATE DISTRICT OF TEXAS AT TEXARKANA

_____

AMY DANNETTE JACKSON, Appellant

V.

THE STATE OF TEXAS, Appellee

_____

ON APPEAL FROM THE 102ND JUDICIAL DISTRICT COURT
RED RIVER COUNTY, TEXAS; TRIAL COURT NO. CR02147;
HONORABLE BOBBY LOCKHART, JUDGE PRESIDING

_____

# APPELLEE'S (STATE'S) BRIEF
_____

TO HONORABLE SIXTH JUDICIAL DISTRICT COURT OF APPEALS:

COMES NOW, the State of Texas, by and through its Red River County and District Attorney's Office, files this its Appellee's Brief under Rule 38.2 of the Texas Rules of Appellate Procedure.

Unless otherwise indicated, Amy Dannette Jackson will be referred to as "Jackson" or "the appellant." The State of Texas will be referred to as "the State" or "appellee."

## STATEMENT OF FACTS

**Factual Background:   First Contact with Suspects.**

In September of 2011, Brandon Denison, a state trooper with the Texas Department of Public Safety since March of 2008, (Trooper Denison) made contact with the appellant (Jackson) regarding "a call about some horses."  *See* RR, pgs. 5-6.  *See also* RR, pg. 34.  The police encountered Jackson and Jason Davidson (Davidson), who was Jackson's boyfriend at the time.  *See* RR, pgs. 6-7.

On that occasion, Trooper Denison "found some paraphernalia, [and] stuff like that."  *See* RR, pgs. 6-7.  Trooper Denison didn't "believe [he] found the drugs that night, just the paraphernalia."  *See* RR, pg. 7.  "It was a Gatorade cap that had some kind of pipe or tubing going through the cap."  *See* RR, pg. 7.  It ended  up testing positive for methamphetamine.  *See* RR, pgs. 34-35.

**Traffic Stop Involving Second Contact with Same Suspects.**

On September 29, 2011, Trooper Denison had occasion to come into contact with Jackson.  *See* RR, pg. 6.  On September 29th, Trooper Denison "was taking a suspect to jail to book him in."  *See* RR, pg. 8.  Trooper Denison observed Davidson operating the truck and trailer, and he knew that his driver's license was suspended.  *See* RR, pg. 8.

Later on, after Trooper Denison "had booked that other gentleman

into jail," he observed Davidson "driving the truck again." *See* RR, pg. 8. Trooper Denison "ran him again just to verify that, and it was indeed still suspended." *See* RR, pg. 8. *See also* RR, pgs. 15, 18.

On September 29th, Trooper Denison passed the vehicle going eastbound on Loop 82 in Red River County. *See* RR, pg. 8. Trooper Denison initiated a traffic stop because Davidson was driving the vehicle, while his driver's license was invalid. *See* RR, pgs. 7, 9, 16. The traffic stop was right at the intersection of FM 412 and Highway 82 East. *See* RR, pg. 31.

Trooper Denison made contact with Davidson, who was behind the wheel of the vehicle. *See* RR, pg. 9. Jackson was seated as a passenger. *See* RR, pg. 16.

Trooper Denison advised Davidson that his license was suspended, and he was advised to get out. *See* RR, pg. 16. Davidson also have previous convictions for driving while license invalid (DWLI), which enhanced the charge to a Class B misdemeanor. *See* RR, pg. 9. Trooper Denison arrested Davidson, who was put in the patrol car. *See* RR, pg. 9. *See also* RR, pgs. 19, 25-26, 35.

Prior to being put in the patrol car (RR, pgs. 35-36), Trooper Denison asked for consent to search the vehicle, and Davidson gave consent. *See*

RR, pgs. 32-33, 35-36. *See also* CR, pg. 53 (paragraph 2). Trooper Denison asked Davidson if he had anything illegal in the truck, and "[h]e says no." *See* RR, pg. 9.

Trooper Denison then searched the vehicle, and had Jackson get out of the vehicle. *See* RR, pg. 9. That's standard operating procedure. *See* RR, pg. 33. Jackson was "already out." *See* RR, pg. 36. Trooper Denison instructed her to go "to the front of the pickup."[1] *See* RR, pgs. 25, 36. "She was standing in the south ditch." *See* RR, pg. 26.

While Jackson went around to the front of the truck, Trooper Denison believed there was probably more drugs in the vehicle, and he searched the inside of the vehicle. *See* RR, pgs. 10-11, 26-27. Trooper Denison did locate some contraband underneath the truck. *See* RR, pgs. 10-11, 38. "It was a black nylon camera case, like a zip-up case, had some digital scales in it, had like a 35-millimeter film canister, a black canister." *See* RR, pg. 11. Inside the canister was a fairly large crystal rock that turned about to be methamphetamine.[2] *See* RR, pg. 11.

---

[1] An officer conducting a lawful traffic stop "may order a passenger out of the car as a precautionary measure, without reasonable suspicion that the passenger poses a safety risk." *See Brendlin v. California*, 551 U.S. 249, 258, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007); *Rhodes v. State*, 945 S.W.2d 115, 118-19 (Tex. Crim. App. 1997) (holding that asking passengers to step outside the vehicle was not an unreasonable intrusion of Fourth Amendment rights), *cert. denied*, 522 U.S. 894, 118 S. Ct. 236, 139 L.Ed.2d 167 (1997).

[2] On January 13, 2014, Davidson pled guilty to the possession of a controlled substance, less than one gram, for what was found in the film container. *See* RR, pg. 37. At the

When Trooper Denison got through searching the pickup, he went back to Jackson and "that Gatorade cap [was] laying on the ground at her feet." *See* RR, pg. 27. From the prior contact with Davidson and Jackson, the same Gatorade lid and the tubing coming out of it was laying right underneath the front bumper where Jackson was standing. *See* RR, pgs. 10, 12, 33.

Trooper Denison asked Jackson for consent to search her. *See* RR, pgs. 12, 21. "She granted consent." *See* RR, pg. 12. *See also* RR, pg. 21. As for a document that Jackson could sign, Trooper Denison said, "We don't typically do that." *See* RR, pgs. 21-22.

Trooper Denison did not pat her down at all (RR, pg. 22); rather, he called for a female deputy to come pat her down. *See* RR, pgs. 12, 23. Sheridan Jones Norlin (Deputy Jones), the female deputy, "had just started that week" working for the Red River County Sheriff's Office. *See* RR, pgs. 41, 48. Deputy Jones was able to get there in "[j]ust a few minutes." *See* RR, pg. 23. *See also* RR, pg. 48. Deputy Jones, who was in field training, came with another male deputy that was training her. *See* RR, pg. 23.

Upon arrival on scene, Deputy Jones exited her vehicle and joined

---

time of the suppression hearing on March 3, 2015, Davidson was already paroled. *See*

Trooper Denison at the front of the suspect's vehicle. *See* RR, pgs. 41, 48. Deputy Jones saw and recognized Jackson. *See* RR, pgs. 41-42. Trooper Denison told Deputy Jones "about the Gatorade cap with the tubing off of it, and [she] had also been present during that case prior to that." *See* RR, pg. 43.

Trooper Denison advised Deputy Jones that "she had consent to search Ms. Jackson," and he "asked her if she would pat her down." *See* RR, pg. 23. *See also* RR, pgs. 44, 50, 55. Out of respect, the male deputy with Deputy Jones and Trooper Denison turned their back. *See* RR, pgs. 12, 24. Deputy Jones did the pat-down around the clothing and felt the object in her pants. *See* RR, pgs. 12-13. As Deputy Jones patted her hands coming up the back of her leg, the top of her hand "struck something hard in her crotch area." *See* RR, pg. 45. *See also* RR, pgs. 51-52. "It was just a hard object." *See* RR, pg. 51. Deputy Jones said, "she's got something in her pants." *See* RR, pg. 13.

When asked, Jackson hesitated. *See* RR, pg. 45. Then, Jackson said, "it's a pipe." *See* RR, pg. 13. *See also* RR, pg. 45 ("a meth pipe"). Jackson removed the pipe out of her underwear. *See* RR, pgs. 13, 36, 54. Deputy Jones took it from her. *See* RR, pg. 46. "It was a glass pipe with a

---

RR, pg. 38.

bulb on the end of it." *See* RR, pg. 24. It was field tested and tested positive for methamphetamine. *See* RR, pg 46. Trooper Denison placed Jackson into custody and "Mirandized" her. *See* RR, pg. 52.

The pipe was sent off to the lab and tested. *See* RR, pgs. 13, 29. "It tested positive for methamphetamines" in the quantity of ".09 grams." *See* RR, pgs. 29, 56. *See also* CR, pg. 58. It was "[a] usable amount of residue." *See* RR, pg. 29.

**Procedural Background.**

On March 27, 2014, a grand jury in Red River County returned an original indictment that charged Jackson with the state-jail felony offense of possession of a controlled substance in Penalty Group 1, less than one gram. *See* CR, pgs. 8-9. *See also* Tex. Health & Safety Code Ann. § 481.115(a)-(b) (West 2010). On or about November 3, 2014, the District Clerk of Red River County was advised of an attorney for Jackson. *See* CR, pg. 20.

On February 9, 2015, Jackson filed her "Motion to Suppress Evidence Obtained Pursuant to an Invalid Consent to Search." *See* CR, pgs. 21-24. On Monday, March 3, 2015, the trial court called cause number CR2147 for purposes of a suppression hearing. *See* RR, pg. 4. Upon the conclusion of the hearing, the trial court took "this under advisement." *See* RR, pg. 57.

16

On April 18, 2016, the trial court signed an order denying the motion to suppress. *See* CR, pg. 36. On the same day, Jackson agreed to a plea-bargain agreement and signed the written plea admonishments. *See* CR, pgs. 37-44. By an Order signed on April 18th (CR, pgs. 59-60), the trial court accepted Jackson's plea, deferred further proceedings without adjudicating her guilt and ordered that Jackson be placed on deferred community supervision for four (4) years. *See* CR, pg. 59. The trial court also ordered Jackson to pay a fine of $2,000.00 along with court costs and restitution. *See* CR, pgs. 47, 59.

On April 18th, the trial court also signed its certification of Jackson's right of appeal. *See* CR, pg. 45. As a plea-bargain case, the trial court certified that it had given permission to appeal, and Jackson had the right of appeal. *See* CR, pg. 45. On April 25th, Jackson filed her notice of appeal. *See* CR, pg. 65.

**Proceedings in this Court of Appeals.**

At or about the same time, the appellant (Jackson) filed her notice of appeal in this Court of Appeals. On or about May 18th, the official court reporter filed the Reporter's Record. The District Clerk of Red River County filed the Clerk's Record on or about June 22, 2016.

On or about July 20th, the appellant (Jackson) filed her brief in the

above-styled and numbered appellate cause.   On August 18th, the State filed a motion to extend time to file its brief, which this Court granted until September 19, 2016.   The State will be filing its brief before that date.

## SUMMARY OF THE ARGUMENT

After a valid traffic stop and arrest of the vehicle's owner for driving while license invalid (DWLI), the legality of which the appellant (Jackson) did not challenge, the appellant's detention was not unreasonably prolonged for either of two (2) reasons: (1) the owner of the vehicle voluntarily gave the arresting officer consent to search the vehicle, thereby reasonably prolonging the appellant's detention; and/or (2) the arresting officer developed sufficient reasonable suspicion to expand his investigative detention from (a) the cumulative information from the prior contact with the same suspects and the same vehicle, or (b) the development of reasonable suspicion that another violation had occurred (i.e. narcotics). Once the arresting officer developed sufficient reasonable suspicion that reasonably prolonged the detention, he asked for consent to search Jackson, which was given. The officer did not exceed the scope of effective consent.

In summary, the arresting officer developed sufficient reasonable suspicion to expand his initial investigation from the traffic offense of DWLI to another violation. Because the reasonable suspicion was sufficient, the trial court did not abuse its discretion in denying the appellant's motion to suppress. *See* CR, pg. 36. Accordingly, this Court should affirm the trial court's order denying the motion to suppress.

## ARGUMENT AND AUTHORITIES

## ISSUE/POINT OF ERROR PRESENTED IN REPLY:  THE TRIAL COURT DID NOT ABUSE ITS DISCETION IN DENYING THE APPELLANT'S MOTION TO SUPPRESS.

### A.     Standard of Review:   Motion to Suppress.

This Court should review the trial court's decision to deny Jackson's motion to suppress evidence by applying a bifurcated standard of review. *See Graves v. State*, 307 S.W.3d 483, 489 (Tex. App.--Texarkana 2010, pet. ref'd); *Rogers v. State*, 291 S.W.3d 148, 151 (Tex. App.--Texarkana 2009, pet. ref'd).   While deferring to the trial court on its determination of historical facts and credibility, this Court should review *de novo* its application of the law and determination of questions not turning on credibility.  *See Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *Graves*, 307 S.W.3d at 489.   Also, this Court should afford deference to a trial court's "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those questions turns on an evaluation of credibility and demeanor.  *See Guzman*, 955 S.W.2d at 89.

Because no findings of fact or conclusions of law were filed, this Court should assume that the trial court made implicit findings of fact that support its ruling as long as those findings were supported by the record.

*See Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005). The trial court's evidentiary ruling "will be upheld on appeal if it is correct on any theory of law that finds support in the record." *See Gonzalez v. State*, 195 S.W.3d 114, 126 (Tex. Crim. App. 2006). *See also Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000); *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).

B. **The Traffic Stop Constituted a "Seizure" of the Driver and the Passenger (Jackson) for an Investigative Detention.**

The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *See Whren v. United States*, 517 U.S. 806, 809, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a "seizure" of "persons" within the meaning of this provision. *See id*., 517 U.S. at 809-10.

1. **A Traffic Stop "Seizes" the Driver and All Passengers.**

For the duration of a traffic stop, the United States Supreme Court has confirmed that a police officer effectively seizes "everyone in the vehicle," the driver and all passengers. *See Arizona v. Johnson*, 555 U.S. 323, 327, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009) (citing *Brendlin*, 551 U.S. at 255). In *Johnson*, the United States Supreme Court held that, in a traffic-stop

21

setting, the first *Terry* condition--a lawful investigatory stop--is met whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation. *See Johnson*, 555 U.S. at 327. "The police need not have, in addition, cause to believe any occupant of the vehicle is involved in criminal activity." *See id.*

Also, the Texas Court of Criminal Appeals has held that passengers in an automobile are subject to temporary investigative detentions in the same manner as pedestrians. *See Rhodes*, 945 S.W.2d at 117. *See also Overshown v. State*, 329 S.W.3d 201, 204 (Tex. App.--Houston [14th Dist.] 2010, no pet.) ("[w]hen police officers signal that a driver should stop a moving vehicle, and in response the driver actually stops the vehicle, then the driver and all passengers inside the vehicle have been seized under the Fourth Amendment."); *Vann v. State*, 216 S.W.3d 881, 888 (Tex. App.--Fort Worth 2007, no pet.) ("[w]hen police officers stop and lawfully detain a driver for committing a traffic offense, all passengers insider the driver's vehicle are also detained."). "The seizure continues for the duration of the traffic stop, and the seizure terminates when the police inform the driver and passengers that they are free to leave." *See Overshown*, 329 S.W.3d at 205 (citing *Johnson*, 129 S. Ct. at 788).

2. **Application: The Appellant, Jackson, Was Detained as Part of the Traffic Stop.**

Here, Jackson did not challenge the legality and/or the propriety of the traffic stop.[3]  *See Lewis v. State*, 664 S.W.2d 345, 348 (Tex. Crim. App. 1984) (it must be remembered that appellant did not challenge the initial stop of herself and others in the vehicle).   As a passenger, however, Jackson was detained as part of the investigative stop.  *See Johnson*, 555 U.S. at 327 ("[t]he police need not have, in addition, cause to believe any occupant of the vehicle is involved in criminal activity."); *Brendlin*, 551 U.S. at 255; *Whren*, 517 U.S. at 809-10.   *See also* Appellant's Brief, pg. 8 ["If the police have the right to stop a vehicle and its driver, they may also (necessarily) detain the passengers while the investigation is going on"].

C.      **The Appellant's Detention Could Be Reasonably Extended.**

In her brief, Jackson's argument was simple:   "there was no reasonable suspicion that would allow the police to either extend the traffic stop or search Jackson."  *See* Appellant's Brief, pg. 10.   In her brief, the appellant's (Jackson's) argument was in two (2) parts:   (1) no reasonable suspicion to extend the stop; and (2) no reasonable suspicion to search her.

1.      **The Appellant's (Jackson's) Detention Was Not Unduly Prolonged.**

---

[3] The issue of standing was not raised in the trial court below; and for purposes of this brief, the State will concede that the passenger (Jackson) could bring a Fourth Amendment challenge to the legality of a traffic stop.   *See Brendlin*, 551 U.S. at 259 (the treatise writers share this prevailing judicial view that a passenger may bring a Fourth Amendment challenge to the legality of a traffic stop).

During the suppression hearing, Trooper Denison testified to the following:

> Q. Okay. So is it an arrestable offense to be driving without a valid license?
>
> A. Yes, sir. Mr. Davidson also had previous convictions for driving with license invalid, which enhanced the charge to a Class B misdemeanor.
>
> Q. Okay. So on his Class B misdemeanor, were you going to arrest him on it?
>
> A. Yes, sir.
>
> Q. Okay. And did you, in fact, take him into custody?
>
> A. Yes, sir, I did.
>
> Q. And what did you do next?
>
> A. After the -- after he was arrested and put in the car, I asked him if he had anything illegal in the truck. He says no. I searched the vehicle incident to arrest. I had Ms. Jackson get out of the vehicle, and then I did locate some more contraband underneath the truck.

*See* RR, pgs. 9-10. Here, the search was "incident to arrest." *See* RR, pg. 9.

a.   **Search Incident to Arrest.**

In *Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), the United States Supreme Court limited the scope of the search incident to arrest doctrine and held that "[p]olice may search a vehicle

24

incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. *See Gant*, 129 S.Ct. at 1723. The United States Supreme Court also stated that "[w]hen these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies." *See id*. at 1723-1724.

Although Trooper Denison initially testified that he "searched the vehicle incident to arrest" (RR, pg. 9), he later answered affirmatively on re-direct examination that he asked for consent to search the vehicle from the owner. *See* RR, pg. 33. When asked on re-direct examination, Trooper Denison also answered affirmatively that Davidson gave consent to search the vehicle. *See* RR, pg. 33. *See State v. Williams*, 275 S.W.3d 533, 537 (Tex. App.--Texarkana 2008, no pet.) (a driver's consent to search the vehicle, if otherwise voluntary, is effective to legalize the search if it is given within the scope of a reasonable traffic stop) (citing *Royer v. Florida*, 460 U.S. 491, 501, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)).

In *Williams*, there was no evidence that a detention was improperly prolonged by the request for a voluntary search of the vehicle. *See id*. As in *Williams*, the same result should apply here because Davidson's consent

to search his vehicle was voluntary (there was no evidence to the contrary), and his consent was effective to legalize the search, which was given within the scope of a reasonable traffic stop. *See Williams*, 275 S.W.3d at 537. Similarly here, there was no evidence that Jackson's detention was improperly prolonged by Trooper Denison's request for a search of Davidson's vehicle. *See id*; RR, pg. 33. This Court should follow *Williams*, and hold accordingly. *See Williams*, 275 S.W.3d at 537. *See also Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) ("[i]t is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent."); *Carmouche*, 10 S.W.3d at 331 ("[c]onsent to search is one of the well-established exceptions to the constitutional requirements of both a warrant and probable cause."); *Vasquez v. State*, 804 S.W.2d 606, 611 (Tex. App.--Dallas 1991, no pet.) (the fact of arrest alone does not preclude a free and voluntary consent to search from being given).

Even if the search did not meet *Gant's* requirements for a valid search incident to arrest, the search of the arrestee's (Davidson's) vehicle was not unreasonable because "another exception to the warrant requirement applie[d]." *See Gant*, 129 S.Ct. at 1723-24. Due to the consensual search

here, *Gant's* limitation on the search-incident-to-arrest exception was inapplicable because "another exception to the warrant requirement applie[d]." *See id*. *See also Barnes v. State*, 424 S.W.3d 218, 225 (Tex. App.--Amarillo 2014, no pet.). Because "another exception to the warrant requirement applie[d]," *see id*, the search of Davidson's vehicle and the resulting detention of Jackson was not unreasonably prolonged. *See Williams*, 275 S.W.3d at 537.

Further, the trial court did not make findings of fact and conclusions of law in the present case, so this Court should assume that the trial court made implicit findings that supported its ruling. *See Torres*, 182 S.W.3d at 902. Here, the trial court could have implicitly found that a consensual search did not unreasonably prolong Jackson's detention. *See id*.

Just as equally, the trial court could have concluded that another exception (i.e. a consensual search) applied as a correct theory of law. *See Gonzalez*, 195 S.W.3d at 126 (the trial court's ruling "will be upheld on appeal if it is correct on any theory of law that finds support in the record."); *Carmouche*, 10 S.W.3d at 328; *Ballard*, 987 S.W.2d at 891. On appeal, here, this Court should uphold the trial court's ruling because it was correct on another theory (i.e. a consensual search), which had support in the record. *See id*.

b.    **Another Basis:   An Extended or Prolonged Detention Was Justified on the Basis of Reasonable Suspicion.**

In addition to a consensual search, the appellant's (Jackson's) detention could be reasonably extended or prolonged if Trooper Denison developed reasonable suspicion that another violation occurred.  *See Fisher v. State*, 481 S.W.3d 403, 407 (Tex. App.--Texarkana 2015, pet. ref'd) ("If, during that investigation, an officer develops reasonable suspicion that another violation has occurred, the scope of the initial investigation expands to include the new offense.") (citing *Goudeau v. State*, 209 S.W.3d 713, 719 (Tex. App.--Houston [14th Dist.] 2006, no pet.)).   "Reasonableness is measured in objective terms by examining the totality of the circumstances." *See Young v. State*, 420 S.W.3d 139, 142 (Tex. App.--Texarkana 2012, no pet.).

"Reasonable suspicion must be founded on specific, articulable facts which, when combined with rational inferences from those facts, would lead the officer to conclude that a particular person actually is, has been, or soon will be engaged in criminal activity."  *See id*.  This is an objective standard that disregards the actual subjective intent of the arresting officer and looks, instead, to whether there was an objectively justifiable basis for the detention.  *See Wade v. State*, 422 S.W.3d 661, 668 (Tex. Crim. App. 2013).

When    discussing    how    reviewing    courts    should    make

reasonable-suspicion determinations, the United States Supreme Court has repeatedly held that courts must look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. *See United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." *See id.*

(1) **Cumulative Information from the Prior Contact.**

In the present case, Trooper Denison testified that he had occasion to have contact with Davidson and the appellant (Jackson) prior to September 29, 2011. *See* RR, pg. 6. Trooper Denison testified that:

> Q. Can you tell the Judge what that contact was about?
>
> A. That contact was a week or so prior to this traffic stop in which it was a call about some horses. The same pickup, the same trailer that we're dealing with on this case was on scene that night. Same stuff, we found some paraphernalia, stuff like that, on that night when we encountered her and her boyfriend at the time.
>
> *   *   *
>
> Q. And you said you found some paraphernalia?

29

A. Yes, sir.

Q. Drug paraphernalia?

A. Yes, sir.

Q. And did you actually find some drugs or what?

A. I don't believe we found the drugs that night, just the paraphernalia.

Q. Okay. And what type of paraphernalia was it?

A. It was a Gatorade cap that had some kind of pipe or tubing going through the cap.

*See* RR, pgs. 6-7. *See also* RR, pg. 21 ("prior dealings with both of them").

When Trooper Denison asked Davidson if he had anything illegal in the truck, and "[h]e says no" (RR, pg. 9), the rationale inference from that fact--when combined with finding "some paraphernalia" during the contact "a week or so prior" (RR, pg. 6)--suggested that Davidson was being untruthful about the contents of the pickup. *See Arvizu*, 534 U.S. at 273 (an officer is allowed to draw on his own experience and specialized training to make inferences from and deductions about the "cumulative information" available). Given the "cumulative information" available to Trooper Denison, which included the facts about finding "some paraphernalia" from the contact "a week or so prior" (RR, pg. 6), the trial court did not err in implicitly finding that reasonable suspicion existed. *See Tanner v. State*,

30

228 S.W.3d 852, 857 (Tex. App.--Austin 2007, no pet.) (viewing the evidence in the light most favorable to the court's decision and assuming that the court made implicit findings of fact supported in the record, the appellate court could not hold that the trial court erred in its application of the law to the facts); *Powell v. State*, 5 S.W.3d 369, 378 (Tex. App.--Texarkana 1999, pet. ref'd) (listing prior drug offenses as a factor that could be considered in determining whether detention was reasonable).

Similarly, the trial court could have implicitly found that reasonable suspicion existed from the "cumulative information," which included the prior contact and the prior finding of drug paraphernalia. *See id.* From the "cumulative information" at that point in time, the trial court could have implicitly found that Trooper Denison was investigating a new drug-offense, and that investigation extended and/or prolonged the appellant's detention.

(2) **From the Reasonable Suspicion Based on "Cumulative Information," The Scope of the Investigation Expanded.**

From the "cumulative information" from the prior contact, along with the inference that Davidson was untruthful, Trooper Denison could have developed reasonable suspicion that another violation had occurred. *See Fisher*, 481 S.W.3d at 407; *Goudeau*, 209 S.W.3d at 719. Because Trooper Denison could have developed reasonable suspicion that another violation had occurred, the scope of the initial investigation expanded from the DWLI

31

traffic offense to the new offense. *See id.* Prior to searching the truck,

Trooper Denison testified to the following:

    Q.    Okay. Let me ask you this: Before you looked in the truck, did you see that same type Gatorade apparatus again?

    A.    No. It wasn't in the truck.

    Q.    Where was it?

    A.    Just prior to searching Ms. Jackson, the same apparatus, the Gatorade lid and the tubing coming out of it, was laying right underneath the front bumper where she was standing.

    Q.    Okay. So it wasn't in the truck; it was where she was --

    A.    It was right in front of where she was standing, yes, sir.

    Q.    At that point in time, did that give you reasonable suspicion to believe there's probably more --

    A.    Yes, sir.

    Q.    -- drugs in the vehicle?

    A.    Yes, sir.

    Q.    And did you search the vehicle at that point?

    A.    Yes, sir.

*See* RR, pgs. 10-11.

As set forth above, the same "apparatus"[4] (from the prior contact with Davidson and Jackson) was laying right under the front bumper where Jackson was standing, and was in plain view. *See Gouldsby v. State*, 202 S.W.3d 329, 336 (Tex. App.--Texarkana 2006, pet. ref'd). In *Gouldsby*, the police officer had observed drug paraphernalia in plain view inside a house during the previous evening. *See id*. In *Gouldsby*, this Court held that the police had reasonable suspicion to effect an investigative detention of the appellant. *See id*.

Of significance and application to the present case, Trooper Denison testified that the "same type Gatorade apparatus" was laying right underneath the front bumper where Jackson was standing. *See* RR, pg. 10. Once Trooper Denison found in plain view the same "apparatus" from the previous contact with the same vehicle, he had reasonable suspicion to effect an investigative detention of the appellant (Jackson), as in *Gouldsby*. *See id*. at 336. Obviously, at that point in time, Trooper Denison had sufficient reasonable suspicion to investigate another violation and/or new drug offense. *See Fisher*, 481 S.W.3d at 407; *Goudeau*, 209 S.W.3d at 719.

c. **Once Trooper Denison Had Reasonable Suspicion, He Asked for Consent to Search, Which Was Voluntarily Given.**

---

[4] "It was a Gatorade cap that had some kind of pipe or tubing going through the cap." *See* RR, pg. 7.

In *United States v. Drayton*, 536 U.S. 194, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002), the United States Supreme Court held that "[t]he fact the officers may have had reasonable suspicion does not prevent them from relying on a citizen's consent to the search." *See id*. at 207. Here, Trooper Denison "asked for consent from Ms. Jackson to search [her]." *See* RR, pg. 12. "She granted consent." *See* RR, pg. 12.

As recognized in *Drayton*, the officers could continue to proceed on the basis of Jackson's consent:

> It would be a paradox, and one most puzzling to law enforcement officials and courts alike, were we to say, after holding that Brown's consent was voluntary, that Drayton's consent was ineffectual simply because the police at that point had more compelling grounds to detain him. After taking Brown into custody, the officers were entitled to continue to proceed on the basis of consent and to ask for Drayton's cooperation.

*See Drayton*, 536 U.S. at 207-08.

Along with the rationale in *Drayton*, the United States Supreme Court has held that a passenger's privacy expectations are "considerably diminished," and the governmental interests at stake are "substantial." *See Wyo. v. Houghton*, 526 U.S. 295, 304, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999). In *Houghton*, the Supreme Court reasoned that a car passenger "will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing."

*See id*. at 304-305. In *Houghton*, the Court rejected a "passenger's property" rule on the basis that it would dramatically reduce the ability to find and seize contraband and evidence of crime. *See id*. at 305.

In applying the *Drayton* and *Houghton* rationale to the facts in the present case, Trooper Denison took Davidson into custody, and he was then "entitled to continue to proceed on the basis of consent and to ask for [Jackson's] cooperation." *See Drayton*, 536 U.S. at 207-08. As recognized in *Houghton*, a car passenger "will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing." *See Houghton*, 526 U.S. at 304-305. As exemplified here, the car passenger (Jackson), whose privacy expectations were "considerably diminished," told Trooper Denison after her rights were read that "Mr. Davidson had thrown a bunch of stuff in her lap and told her to hid it or get rid of it." *See* RR, pgs. 29-30.

Once Trooper Denison went back to Jackson and "that Gatorade cap [was] laying on the ground at her feet," (RR, pg. 27), he had sufficient probable cause to suspect the concealment of narcotics on her person. *See Wiede*, 214 S.W.3d at 24 (probable cause exists when the totality of the known facts and circumstances are sufficient to allow a person of reasonable prudence to believe that contraband will be found). Even though Trooper

Denison had sufficient probable cause, he still asked Jackson for consent. *See* RR, pgs. 12, 21. Once "[s]he granted consent" (RR, pgs. 12, 21, 44-45), the resulting search was validated and proper.[5] *See Schneckloth*, 412 U.S. at 219 ("[i]t is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent."); *Carmouche*, 10 S.W.3d at 331 ("[c]onsent to search is one of the well-established exceptions to the constitutional requirements of both a warrant and probable cause.").

In *McAllister v. State*, 34 S.W.3d 346 (Tex. App.--Texarkana 2000, pet. ref'd), the appellant was a passenger in a vehicle that was stopped because it did not have a front license plate and had an expired inspection sticker. *See id*. at 349. The peace officer discovered that the driver of the vehicle had an outstanding warrant, and the driver was placed in custody. *See id*. In the course of the encounter, the officer searched the appellant and discovered a crack pipe and cocaine. *See id*.

Subsequently, the appellant challenged the legality of the search in a motion to suppress the cocaine and the crack pipe, which the trial court overruled. *See id*. A jury in Rusk County found the appellant guilty of possession of a controlled substance in the amount of less than one gram, a

---

[5] *See* Appellant's Brief, pgs. 15-17.

state jail felony. *See id.* at 348-49. The trial court sentenced the appellant to two years' confinement and a fine. *See id.* at 349.

In affirming the conviction in *McAllister*, this Court reviewed the record in the light most favorable to the trial court's ruling and found that the State met its burden of demonstrating by clear and convincing evidence that the appellant consented to the search. *See id.* at 351. Here, Trooper Denison testified, "[s]he gave consent." *See* RR, pg. 12. Further, Deputy Jones testified to the following:

> Q. Okay. And so did you conduct a pat-down for any type of drugs and/or weapons?
>
> A. Yes.
>
> Q. And why would you do a pat-down for weapons?
>
> A. We commonly pat down suspects for weapons due to the fact that, you know, if somebody has a concealed weapon, that puts us in danger, and we usually pat them down for officer safety.
>
> Q. Okay. But she consented to be patted down' is that correct?
>
> A. Yes.
>
> Q. So when she consented to be patted down, you felt that you had every right to do that at that point?
>
> A. Yes.
>
> Q. She could have denied your consent; is that right?

A.    Yes.

*See* RR, pgs. 44-45.

As set forth above, the trial court could have found that consent was voluntarily given by Jackson (RR, pgs. 12, 21, 44-45), and that implicit finding had support in this appellate record.    *See Torres*, 182 S.W.3d at 902; *Carpenter v. State*, 952 S.W.2d 1, 4 (Tex. App.--San Antonio 1997) (trial court's implicit finding, that consent to search was voluntarily given, was supported by the record), *aff'd*, 979 S.W.2d 633 (Tex. Crim. App. 1998).    In reviewing the record in the present case, this Court should find, as in *McAllister*, that the State met its burden of demonstrating by clear and convincing evidence that the appellant (Jackson) consented to the search. *See McAllister*, 34 S.W.3d at 351.    *See also Kendrick v. State*, 93 S.W.3d 230, 234 (Tex. App.--Houston [14th Dist.] 2002, no pet); *James v. State*, 72 S.W.3d 35, 41 (Tex. App.--Texarkana 2001, pet. ref'd).

e.    **The Police Did Not Exceed the Scope of Effective Consent.**

In *James* and *McAllister*, this Court held that "[w]hen a person voluntarily consents to a search, the officer's authority to perform the search is not without limit."    *See James*, 72 S.W.3d at 42; *McAllister*, 34 S.W.3d at 351.    "The extent of the search is limited to the scope of the consent given, and the scope of the consent is generally defined by its expressed object."

*See id*.  "The standard for measuring the scope of consent is that of objective reasonableness, i.e., what a reasonable person would have understood by the exchange between the officer and the individual."  *See id*.

In the present case, a reasonable person in Jackson's position would have understood that the object of the search would be evidence of narcotics activity, and that the search would be limited to places where such evidence could reasonably be concealed.  *See James*, 72 S.W.3d at 42.  By the exchange with Deputy Jones, a reasonable person in Jackson's position would also have understood the search to include only a pat down of Jackson's outer clothing to ensure that Deputy Jones and Trooper Denison would be safe.  *See McAllister*, 34 S.W.3d at 351.

Here, the pat-down search, which began pursuant to Jackson's consent, was limited in scope to the appellant's (Jackson's) outer clothing. *See id*.  *See also* RR, pg. 45.  When the hand of Deputy Jones "struck something hard in her crotch area" (RR, pg. 45), it was not unreasonable to expect that evidence of narcotics activity would be concealed in Jackson's underwear.  *See James*, 72 S.W.3d at 43 (not unreasonable to expect that evidence of narcotics activity would be concealed in a decorative metal tin).

Because Trooper Denison had sufficient reasonable suspicion to continue the detention of Jackson and was entitled to proceed on the basis of

consent, which was voluntarily given, the resulting search was not unreasonable. For that reason, the trial court did not abuse its discretion in denying the appellant's motion to suppress. Accordingly, the trial court's order denying the motion to suppress should be affirmed. *See* CR, pg. 36.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, the State of Texas prays that upon final submission upon oral argument, this Court should affirm the trial court's order denying the motion to suppress; adjudge court costs against the appellant and for such other and further relief, both at law and in equity, to which the State may be justly and legally entitled.

Respectfully submitted,

Val J. Varley, County and District Attorney
Red River County Courthouse
400 North Walnut Street
Clarksville, Texas     75426-4012
(903) 427-2009
(903) 427-5316 (fax)
valvarley@valornet.com

By:___/s/ Val Varley_____
      Val J. Varley, County-District Attorney
      SBN# 20496580

**ATTORNEYS FOR THE STATE OF TEXAS**

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9.4(i)(3) of the Texas Rules of Appellate Procedure, the "State's Brief" was a computer-generated document and contained 7,483 words--not including the Appendix (not applicable here). The undersigned attorney certified that he relied on the word count of the computer program, which was used to prepare this document.

> __/s/ Val Varley_____
> Val J. Varley
> valvarley@valornet.com

## CERTIFICATE OF SERVICE

This is to certify that in accordance with Tex. R. App. P. 9.5, a true copy of the "Appellee's (State's) Brief" has been served on the 6TH day of September, 2016 upon the following:

M. Mark Lesher
126 W. 2nd St
Mt. Pleasant, TX    75455

> _/s/ Val Varley_____
> Val J. Varley
> valvarley@valornet.com